UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VIKY SARAI FLORES BENITEZ,                     :
ANA DELMI BENITEZ ALVARADO,                     :
JAVIN BENIGNO SANTOS GALVEZ,                     :
and J.S.R., a minor,                     :
           Plaintiffs,              :
                                :
     v.                                :    Civ. No. 3:22-cv-884 (JCH)
                                :
STEPHEN MILLER, JEFFERSON B. SESSIONS,  :
KIRSTJEN NIELSEN, KEVIN McALEENAN,                     :
and UNITED STATES OF AMERICA,                     :
           Defendants.              :

## AGREEMENT REGARDING THE FORMAT FOR
## PRODUCTION OF DOCUMENTS AND RELATED MATTERS

Plaintiffs, Viky Sarai Flores Benitez, Ana Delmi Benitez Alvarado, and Javin Benigno Santos

Galves, on his own behalf and on behalf of his minor child, J.S.R. (the "Plaintiffs"), and Defendant

the United States of America (the "Defendant" or the "United States"), by and through their

undersigned counsel, hereby agree that Hard Copy Documents and Electronically Stored Information

("ESI") shall be produced in the above-captioned action (the "Action") in accordance with the terms

set forth herein (the "Protocol").

**A.    Definitions**

1.    The term "Electronically Stored Information" ("ESI") means information that is stored

in an electronic medium (including storage in a Database System as defined herein) and includes

Electronic Documents and Metadata as defined herein.

2.    The term "Emails" means messages found in an Email repository (e.g., Outlook PST,

Lotus NSF).

3.      The term "Other ESI" means all ESI, except for Emails, including voicemail, text messages, and instant messages.

4.      The term "Database System" means any system that is accessible consisting of a group of integrated files, which is stored in one location or distributed across multiple locations in a network, and made available to several users, and consisting of a tabulation of corresponding information which can be searched, organized, classified, and accessed in multiple ways. "Database System" includes computers and any device where ESI could be stored.

5.      The term "Document," as used herein, includes all items listed in Rule 34(a)(1)(A) and (B) of the Federal Rules of Civil Procedure, including any ESI or tangible thing (including Emails), however produced or reproduced, and each and every thing from which information can be processed or transcribed. "Documents" shall include both Hard Copy Documents (as defined herein) and Electronic Documents (as defined herein). A draft or non-identical copy is a separate document within the meaning of this term and includes a preliminary version of a document that has been shared by the author with another person (by Email, print, or otherwise).

6.      The term "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to: Email; word processing files (e.g., Microsoft Word); computer presentations (e.g., PowerPoint); and spreadsheets (e.g., Microsoft Excel).

7.      The term "Hard Copy Document" means Documents existing in paper or other tangible form at the time of collection.

8.      The term "Documents Produced," as used herein, includes all documents produced in any manner during the Action. The party producing such documents is the "Producing Party," and the party receiving such documents is the "Receiving Party."

9.      The terms "Party" or "Parties," as used herein, means the Parties to the Action, including their employees and agents.

**B.      General**

1.      The Parties shall take reasonable and good faith steps to comply with this Protocol. They agree to promptly alert all other parties concerning any technical problems associated with complying with this Protocol. To the extent issues arise with respect to the production of ESI and other Documents that are not contemplated by this Protocol, the Parties shall meet and confer in good faith prior to making an application for relief to the Court. This Protocol is subject to amendment upon written agreement of the parties.

2.      This Protocol shall not enlarge or affect the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Protocol is properly discoverable, relevant, or admissible in this or in any other Action.

3.      Subject to the Court's mandatory initial discovery requirements and the Parties' objections and responses to requests for production of Documents in this Action, the production of all Documents in this litigation shall be produced in the manner provided herein. Nothing in this Protocol shall be interpreted to require disclosure of materials that a Party contends are protected from disclosure by an applicable privilege, any statutory or regulatory limitation of disclosure, or any other applicable limitation on disclosure.

4.      The Parties will meet and confer to identify mutually agreeable search terms and custodians for E-mails and Other ESI files to identify potentially responsive documents. Each Party shall be provided an opportunity to propose additions or amendments to the search terms and custodians. The Parties acknowledge that the agreement to the use of such search terms and custodians shall not be construed as a waiver of any Party's right to request subsequent searches and

productions where there is a showing that the agreed-to search terms and procedures have resulted in inadequate productions or failed to identify relevant materials. The Parties reserve their right to object to any additional requests or subsequent searches. Documents identified by search terms may be reviewed for privilege, confidentiality, redactions, or responsiveness prior to production, and nothing in this Order shall be construed as a limitation on any Party's ability to do so

5.     The Parties will produce Documents and ESI on a rolling basis so as to provide each other with responsive, non-privileged or non-protected Documents and ESI as expediently as possible.

6.     Unless this Court orders otherwise, each Party shall bear the costs of producing its own documents.

7.     Notwithstanding any other provision of this Protocol, provided a copy of the ESI subject to preservation in this matter remains accessible and unaltered or a new copy is created that preserves the ESI, including any metadata (to the extent it exists), the Parties may:

a.     edit non-final documents to the extent necessary to carry out their ordinary duties, and provided that all drafts and final versions of the Document created as a result are preserved and, if subject to production based upon the parties' respective requests for production, objections, search terms, and date limiters, produced;

b.     move unfiled Documents or ESI into files or folders to adhere to an organizational scheme that was created before the complaint was filed in this matter providing doing so does not alter the parent-child relationship (or any other form of unitization) of the Documents or ESI. Nothing in this subparagraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI not subject to preservation in this matter;

c.     delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of a lease;

d.     copy data from one device to another, or from one location to another;

e.     undertake routine maintenance of a database, including input additional data, access data, update the software running the database, and append new data;

f.     compress, decompress, encrypt, or decrypt data provided doing so does not significantly degrade the quality of the data;

## C.     Format of Production

1.     ESI and Hard Copy Documents shall be produced in the format outlined below. All ESI, except as outlined below shall be rendered in TIFF image format, and accompanied by an Opticon/Concordance® Image Cross Reference file. All applicable metadata/database (see below) shall be extracted and provided in Concordance® load file format.

a.     **Image File Format:** All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.

b.     When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression). When producing in color, paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

i.     All TIFF file names shall include the unique Bates number burned into the image. (See paragraph D.3, below, regarding Bates number instructions.)

ii.    All TIFF image files shall be stored with the ".tif" extension.

iii.   Images shall be OCR'd using standard COTS products.

1.     An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report

shall include the DOCID or Bates number(s) corresponding to each such image.

a.   All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

b.   No image folder shall contain more than 2,000 images.

c.   **Opticon/Concordance® Image Cross Reference file:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

Below is a sample:

REL000000001,,.\IMAGES\001\REL000000001.TIF,Y,,,

REL000000002,,.\IMAGES\001\REL000000002.TIF,,,,

REL000000003,,.\IMAGES\001\REL000000003.TIF,,,,

REL000000004,,.\IMAGES\001\REL000000004.TIF,Y,,,

REL000000005,,.\IMAGES\001\REL000000005.TIF,,,,

The fields are, from left to right:

- Field One – (REL000000001) – the Bates Number. This value must be unique for each row in the OPT file. The first page of each document must match the DOCID or BEGDOC# value of the respective document.

- Field Two – (blank) – the volume identifier. This field is not required.

- Field Three – (.\IMAGES\001\REL000000001.TIF) – The relative file path to the image to be loaded.

- Field Four – (Y) – the document marker. A "Y" indicates the start of a unique document.

- Field Five – (blank) – The folder indicator. This field is not required, and typically is not used.

- Field Six – (blank) – The box indicator. This field is not required, and typically is not used.

- Field Seven – (blank) – The page count. This field is not required.

d.   Concordance® Load File: Images should also be accompanied by a flat, document-level load file to provide the metadata and native files containing delimited text that will populate fields in a searchable, flat database environment. The file encoding must be one of four types: Western European (Windows), Unicode (UTF16), Big-Endian Unicode or UTF8. The file should contain the required fields listed below in section 3.

1.   Text delimited load files are defined using the standard Concordance delimiters. For example:

| | |
|---|---|
| *Field Separator* | ¶ or Code 020 |
| *Text Qualifier* | þ or Code 254 |
| *Newline* | ® or Code 174 |
| *Multi-value* | º or Code 167 |
| *Nested values* | \ or Code 092 |

2.   This load file should contain the relative file path to the individual multi-page, document level text files.

3.   This load file should also contain the relative file path to all provided native  files, such as Microsoft Excel or PowerPoint files.

4.   There should be one line for every record in a collection.

5.   The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDATE, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

e.   The extracted/OCR text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

f.      Directory and folder structure: The directory structure for productions should be:

**\CaseName\LoadFiles**

**\CaseName\Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)

**\CaseName\Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)

**\CaseName\Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

2.      **Required Metadata/Database Fields:** A "✓" denotes that to the extent the indicated field exists for a Document it should be present in the load file produced. The Parties will meet and confer about any field which cannot be populated automatically (i.e., would require manual population of information).

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | Text | Unlimited | | ✓ | ✓ |
| DUPECUSTODIAN FILE PATH | Listing of all the file locations of the document before de-duplication | Text | Unlimited | | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose Email, Email, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Sender (i.e.:  Email address, Last name, First name) | Text | 160 | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| TO | Recipient (i.e.: Email address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients (i.e.: Email address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients (i.e.: Email address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line of Email | Text | Unlimited | | ✓ | |
| TITLE | Document Title | Text | Unlimited | | | ✓ |
| CONVINDEX | Email system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DOCDATE | Last Modified Date for files and Sent date for Email, this field inherits the date for attachments from their parent. Do not provide 00/00/0000. | Date | MM/DD/YYYY | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date and time Sent (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |

| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM: SS | | ✓ | ✓ |
|---|---|---|---|---|---|---|
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM: SS | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM: SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM: SS | | ✓ | ✓ |
| TIME ZONE OFFSET | Time zone of collection locality, relative to Coordinated Universal Time (UTC). E.g., for US Central Standard Time (CST), the value for this field should be -6.0 | Decimal | 10 | | ✓ | |
| FILE SIZE | Native File Size in KBs | Decimal | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete Email folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |

| Field name | Field Description | Field Type | Field Value | Hard Copy Document | Email | Other ESI |
|---|---|---|---|---|---|---|
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to the Parties. | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | Email header.  Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Description that represents the file type to the Windows Operating System. E.g., Adobe Portable Document Format, Microsoft Word 97 – 2003, or Microsoft Office Word Open XML Format. | Text | 160 | | ✓ | ✓ |
| HAS HIDDEN CONTENT | Identifies whether the document has comments, track changes or other hidden content associated with it | Text | Yes/No | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| HAS REDACTIONS | Identifies whether a record has been produced with redactions; should be populated with Y for records with redactions and N for records without redactions. | Text | Yes/No | ✓ | ✓ | ✓ |

3.      **De-Duplication, Near-Duplicate Identification, Technology Assisted Review, Email Conversation Threading and Other Culling Procedures**

    a.      De-duplication of exact hash copies shall be performed globally – across all custodians. The custodian of each record shall be populated in the DupeCustodian field.

    b.      All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNIST, should be excluded from delivery to the Parties. All available metadata from files withheld from delivery due to the deNIST process will be available upon request.

    c.      All files should be globally de-duplicated with the following conditions:

        i.      The "DupeCustodian" metadata field (listing of all custodians who had the document before de-duplication) must be provided with the document production.

        ii.      The "DupeCustodian File Path" metadata field (listing all the file locations of the document before de-duplication) must be provided with the document production.

        iii.      All files and metadata for the duplicate documents removed during de-duplication must be preserved and available for production upon request.

        iv.      No customization of hashing may occur without prior express approval by the Parties.

        v.      De-duplication must be done by document family, not by individual document.

4.      **Parent-child relationships:** The association between an attachment and its parent document shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of the production numbers, with the first attachment named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

a.   All Hard Copy Documents shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).

5.     **Hidden Text:** All hidden text (e.g., track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file to the extent doing so will not result in the production of material that a Party contends is protected from disclosure by an applicable privilege, any statutory or regulatory limitation of disclosure, or any other applicable limitation on disclosure. For files that cannot be expanded the natives file shall be produced with the image file to the extent doing so will not result in the production of material that a Party contends is protected from disclosure by an applicable privilege, any statutory or regulatory limitation of disclosure, or any other applicable limitation on disclosure.

6.     **Searchable Text:** The Parties agree that they will produce Searchable Text for all Electronic Documents. Likewise, the Parties agree that they will produce Searchable Text for all Hard-Copy Documents that have been converted to images.

7.     **Native Production of Electronic Documents and ESI:** The Parties agree to produce Microsoft Excel files and any other files that cannot be rendered to TIFF natively to the extent doing so will not result in the production of material that a Party contends is protected from disclosure by an applicable privilege, any statutory or regulatory limitation of disclosure, or any other applicable limitation on disclosure. In the event a party requests native copies of other Documents, they shall be provided upon good cause shown.

a.   Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined

above as well as a placeholder image which indicates a native file is being produced.

    b.    ESI shall be produced in a manner which is functionally usable by the Parties. The following are examples:

    • AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

    • GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

    • Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

    c.    Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in above for "Other ESI."

8.    **Translation of Produced Materials:** For any foreign-language documents responsive to document requests that a Party translates or translated into the English language for its own purposes, the Producing Party shall produce the translation of the Document with the Document, except to the extent such translation is protected by an applicable privilege, any statutory or regulatory limitation of disclosure, or any other applicable limitation on disclosure..

9.    **Encrypted Files:** Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production. If an encrypted file is encountered but is unable to be processed it shall be reported as an exception in the accompanying Exception Report and shall include all available metadata associated with the data, including custodian information.

10.     **Structured Data:** Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), or other proprietary database, the Parties must confer and reach agreement on what information to extract and how to produce it prior to any production.

11.     **Production of Social Media:** To the extent the Producing Party produces responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.), the Parties agree that to the extent reasonably practicable such production will meet the following requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

12.     **Production of Images from which Text Cannot be OCR Converted:** An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

**D.     Production Specifications**

1.     **Media Formats for Storage and Delivery of Production Data:** Produced Documents and ESI shall be delivered on any of the following media:

a.     CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.

b.     External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives.

c.     Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

d.      Secure FTP site.

e.      Any other mutually agreeable media storage device or means of electronic transmittal.

2.      **Labeling:** Media should be labeled with the case name, production date, Bates range, producing party, and the "Confidential-Subject to Protective Order" designation or other notation if applicable to the documents provided in the media.

3.      **Bates Number Convention:** All images should be assigned Bates numbers before production to the Parties. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially (i.e., page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file). The production will be made on a rolling basis and the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|  | *Document #1* | *Document #2* |
|---|---|---|
| *Page #1* | PREFIX00000000001 | PREFIX00000000002 |
| *Page #2* | PREFIX00000000001.002 | PREFIX00000000002.002 |

*Page #3*          PREFIX00000000001.003          PREFIX00000000002.003

4.    **Virus Protection and Security for Delivery of Production Data:** Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the Parties. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. All encryption software shall be used with approval by and with the written consent of the Parties.

5.    **Compliance and Adherence to Generally Accepted Technical Standards:** Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

6.    **Read Me Text File:** All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

7.    **Exception Report:** An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

8.    **Transmittal Letter to Accompany Deliverables:** All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced. Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.

**E.    Privilege Log**

1.    Should any Documents be withheld or redacted on the basis of (1) privilege, (2) statutory or regulatory limitation on disclosure, or (3) any other asserted basis applicable under law, the Party asserting such a claim (the "Producing Party") will exchange logs ("Privilege Logs") no later than 40 days after withholding or redacting such document. The Parties may stipulate to extend the time period.

2.    All Privilege Logs produced in this matter will include separate entries for each Document being withheld or redacted, including separate entries for each withheld or redacted Document in a family of Documents (e.g., for a privileged email with privileged attachments, the email and the attachments will each have separate entries). Withheld or redacted Documents within the same Document family shall be logged consecutively on the Privilege Logs.

3.    The content of the Privilege Logs must include the information required by the Federal Rules of Civil Procedure 26(b)(5), and shall include the following information corresponding to each Document being withheld or redacted:

a.    its Bates range;

b.    its file extension;

c.    whether it is being withheld or redacted;

d.    the basis or bases asserted for withholding or redacting such Document;

e.   whether it is a parent or attachment;

f.   the date, if available, of the Document;

g.   its author;

h.   its recipients (to, cc, and bcc);

i.   its subject (unless a Party asserts a claim of privilege regarding the same);

j.   a description of the withheld or redacted Document in a manner that, without revealing information claimed privileged, will enable a Party to assess the validity or efficacy of the basis or bases asserted for withholding or redacting the Document;

4.   An Email shall be treated as a single Document regardless of the number of threaded Emails contained within the message body. The log entry for a withheld or redacted threaded Email shall include the information required by Paragraph E.3, but such information shall be limited to the information and/or metadata associated with the top level message in the Email thread. Nothing in this paragraph shall prevent the Party receiving the Privilege Log from requesting information from other messages in the Email thread if the information from the top message in the thread is insufficient to reasonably assess the basis or bases for withholding or redacting the Document.

5.   Notwithstanding any other provision of this Protocol, a privilege log is not required with respect to the following:

a.   Privileged communications regarding this litigation that are between individuals at the Department of Justice or at any agency whose sole role is as counsel or support staff to counsel (including, but not limited to, litigation managers, administrative assistants, and paralegals).

b.   Privileged communications regarding *Ms. J.P. v. Sessions*, No. 2:18-cv-06081 (C.D. Cal.); *Ms. L. v. ICE*, No. 3:18-cv-00428 (S.D. Cal.), *A.F.P. v. United States*, No. 2:20-cv-00065 (D. Ariz.); *K.O. v. Sessions*, No. 4:18-cv-40149 (D. Mass.); *A.I.I.L. v. Sessions*, No. 4:19-cv-00481 (D. Ariz.); *Peña-Arita v. United States*, No. 7:19-cv-00288 (S.D. Tex.); and *D.A. v. United States*, No. 20-cv-3082 (N.D. Ill.), that are between individuals at

the Department of Justice or at any agency whose sole role is as counsel or support staff to counsel (including, but not limited to, litigation managers, administrative assistants, and paralegals). To the extent additional litigation arises out of the separation of families at the Southwest border between January 20, 2017, and June 26, 2018, the Government may identify such litigation to Plaintiffs and the parties will confer in good faith as to whether privileged communications regarding such additional litigation may be excluded from a privilege log.

    c.      Privileged communications that are between individuals at the Department of Justice or at any agency whose sole role is as counsel or support staff to counsel (including, but not limited to, litigation managers, administrative assistants, and paralegals) regarding any of the administrative claims submitted by any claimant in advance of this litigation, or the litigation identified or that may be identified in accordance with paragraph b. above.

    d.      Privileged communications regarding this litigation or any immigration or asylum proceedings that are between Plaintiffs and their counsel or support staff to counsel (including, but not limited to, litigation managers, administrative assistants, paralegals, and translators).

6.     All privileges logs produced in this matter must be produced in an electronic format that allows text searching.

7.     Documents that are withheld from production on the basis of privilege or some other applicable claim shall be replaced with a single Bates stamped slip-sheet.

**Accepted and agreed:**                     **Accepted and agreed:**

Dated:                                Dated: