# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIKY SARAI FLORES BENITEZ,<br>ANA DELMI BENITEZ ALVARADO,<br>JAVIN BENIGNO SANTOS GALVEZ,<br>and J.S.R., a minor,<br><br>*Plaintiffs,*<br><br>v.<br><br>STEPHEN MILLER, JEFFERSON B.<br>SESSIONS, KIRSTJEN NIELSEN, KEVIN<br>McALEENAN, and UNITED STATES OF<br>AMERICA,[1]<br><br>*Defendants.* | Case No. 3:22-cv-00884(JCH) |

## REPORT OF PARTIES' RULE 26(f) PLANNING MEETING

Date Complaint Filed:                     July 13, 2022

Date Complaint Served on Defendants:

        United States                 August 10, 2022
        Jefferson B. Sessions     August 10, 2022
        Kevin McAleenan            August 10, 2022
        Stephen Miller                September 15, 2022
        Kirstjen Nielsen              October 3, 2022

Date of Defendant's Appearance: October 5, 2022 (United States)

On October 28, 2022, Defendants filed a notice substituting the United States for the individual defendants. *See* ECF No. 34. Plaintiffs contested this notice on November 8, 2022 and plan to brief the matter in their opposition to Defendant United States' Motion to Dismiss. *See* ECF Nos. 38, 39.

---

[1] It is Defendants' position that the caption should be changed to substitute the United States for the individual defendants. *See* ECF No. 34.

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on October 13, 2022. The participants were:

Attorney Muneer I. Ahmad (ct28109)
Attorney Kirby Tyrrell (phv206703)
Amanda Gómez Feliz, Law Student Intern
Juan Fernando Luna, Law Student Intern
Gabriela Monico, Law Student Intern
Fernando Rojas, Law Student Intern
Tanveer Singh, Law Student Intern
Worker and Immigrant Rights Advocacy Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 902020
New Haven, Connecticut 06520-9090
Email: muneer.ahmad@ylsclinics.org
Email: kirby.tyrrell@ylsclinics.org
Phone: (203) 432-4800

For the Plaintiffs, Viky Sarai Flores Benitez, Ana Delmi Benitez Alvarado, Javin Benigno Santos Galvez, and J.S.R.

Assistant U.S. Attorney Carolyn A. Ikari (ct13437)
Assistant U.S. Attorney Michelle McConaghy
Assistant U.S. Attorney John Larson
Department of Justice
450 Main Street, Room 328
Hartford, Connecticut 06103
Email: carolyn.ikari@usdoj.gov
Phone: (860) 760-7953

For the Defendant, United States of America.

## I.      CERTIFICATION

Undersigned counsel, after consultation with their clients, certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II.   JURISDICTION

### A.   SUBJECT MATTER JURISDICTION

The Plaintiffs claim that the Court has subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§ 1331, 1346(b), and 1350.

Defendant, the United States of America, asserts that the Court lacks subject matter jurisdiction for the reason that Congress has not waived the federal government's sovereign immunity from claims for money damages in the circumstances presented in this case. The United States of America has been substituted as the proper party defendant for formerly named Defendants Stephen Miller, Jefferson B. Sessions, Kirstjen Nielsen and Kevin McAleenan. ECF No. 34.

### B.   PERSONAL JURISDICTION

Personal jurisdiction is not contested.

## III.   BRIEF DESCRIPTION OF CASE

### A.   Claims of Plaintiffs

In Summer 2018, Defendants and other U.S. government employees separated fourteen-year-old Viky Sarai Flores Benitez from her mother, Ana Benitez Alvarado, and nine-year-old J.S.R. from his father, Javin Benigno Santos Galvez, in an attempt to coerce the two families to abandon their asylum claims and to deter others fleeing violence and danger in Central America from seeking refuge in the United States. Defendants then sent both children thousands of miles away to Connecticut while incarcerating each parent in Texas and preventing communications between parent and child.

Plaintiffs allege that acts committed by Defendants Miller, Sessions, Nielsen, and McAleenan in designing and implementing the Zero Tolerance policy constitute torture and

inhumane treatment, violative of the law of nations. Under the Alien Tort Statute, "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C § 1350. Furthermore, Plaintiffs allege that the United States is liable for torts suffered by Plaintiffs during and as a result of the family separation under the Federal Tort Claims Act (FTCA). Plaintiffs allege that United States' tortious conduct amounts to intentional infliction of emotional distress under Connecticut and Texas law, false imprisonment under Connecticut and Texas law, negligent infliction of emotional distress under Connecticut law, negligence under Connecticut and Texas law, and abuse of process under Connecticut and Texas law.

### B. Defenses and Claims of Defendant

On or around May 12, 2018, Plaintiff, Flores Benitez (then age 14) and her mother, Plaintiff Benitez Alvarado, unlawfully entered the United States. Shortly thereafter, they were detained by Border Patrol. Plaintiff Benitez Alvarado was referred for prosecution for unlawfully entering the United States and was moved to a secure DHS adult immigration detention facility. Plaintiff Flores Benitez was designated an unaccompanied minor, was transferred to the custody of ORR, and was moved to the Noank Community Support Services facility in Noank, Connecticut.

On or around June 11, 2018, Plaintiff J.S.R. (then age 9) and his father, Plaintiff Santos Galvez, unlawfully entered the United States. Shortly thereafter, they were detained by Border Patrol. Plaintiff Santos Galves was referred for prosecution for unlawfully entering the United States and was moved to a secure DHS adult immigration detention facility. Plaintiff J.S.R. was designated an unaccompanied minor, was transferred to the custody of ORR, and was moved to the Noank Community Support Services facility in Noank, Connecticut.

Noncitizens who arrive in the United States, including those who arrive between ports of

entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). When a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Individuals arriving in or present in the United States who are deemed inadmissible are subject to removal from the United States and, as appropriate, detention pending such removal. 18 U.S.C. §§ 1182(a)(6)(A); 1225(b); 1226; 1357. The federal government possesses statutory authority to "arrange for appropriate places of detention for noncitizens detained pending removal or a decision on removal." 18 U.S.C. § 1231(g)(1).

Federal immigration law authorizes the United States to provide for the custody and care of unaccompanied minors who are present in the United States without lawful immigration status. In fact, under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). Once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. See 8 U.S.C. § 1232(c)(3).

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. These policies directed DHS to detain and prosecute those violating Federal or State law, including Federal immigration law. In addition, on May 4, 2018, the Secretary of Homeland Security directed officers and agents to ensure that all adults deemed prosecutable for improper entry in violation of 8 U.S.C. § 1325(a)

are referred to DOJ for criminal prosecution. This initiative applied to all amenable adults, including parents or legal guardians traveling with their minor children. Consistent with Executive Order 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with their children – who unlawfully entered the United States along the Southwest border in violation of 8 U.S.C. § 1325. See generally EO 13767. Minor children of those adults were transferred to ORR custody pursuant to the TVPRA.

Federal law required that children be placed into ORR custody once the children were designated as unaccompanied minors. The United States maintains that it is immune from suit under the FTCA on several grounds, including that the separations of Plaintiffs from their children were pursuant to the execution of federal criminal and immigration laws, and their claims are based upon discretionary, policy-based conduct. The United States further maintains that Plaintiffs have not pleaded actionable claims under applicable state law. The Defendant denies that the Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent.

IV.   **STATEMENT OF UNDISPUTED FACTS**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. Stephen Miller was the Senior Advisor to the President in 2017-18.
2. Defendant Jefferson B. Sessions III was the Attorney General of the United States in 2017-18.
3. Defendant Kirstjen Nielsen was the Secretary of Homeland Security in 2017-19.

    4.    Defendant Kevin McAleenan was the Commissioner of Customs and Border Protection (CBP) in 2017-18.

## V. CASE MANAGEMENT PLAN

### A. Initial Disclosures

Plaintiff's position is that Common Discovery should be provided in lieu of initial disclosures, on a schedule previously proposed to the Court. *See* ECF No. 37. Defendant's position is that discovery is inappropriate until the Court rules on Defendant's motion to dismiss, which, among other things, challenges subject matter jurisdiction. *See* ECF No. 31.

### B. Scheduling Conference

    1.    The parties do not request to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

    2.    The parties prefer that a scheduling conference, if held, be conducted in person.

### C. Early Settlement Conference

    1.    The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

    2.    The parties do not request an early settlement conference at this time.

    3.    If a settlement conference is ordered, the parties prefer a settlement conference with a United States Magistrate Judge.

    4.    The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

### D. Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings

The parties have discussed any perceived defects in the pleadings and have reached the following agreements for resolution of any issues related to the sufficiency of the pleadings.

1.      Plaintiffs should be allowed until December 5, 2022 to file motions to join additional parties and until December 15, 2022 to file motions to amend the pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

2.      Defendant should be allowed until December 5, 2022 to file motions to join additional parties. If Plaintiffs amend the complaint, Defendant should be allowed 45 days from when the amended complaint is filed to file a response. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

**E.     Discovery**

a.      Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

**Plaintiff's Position:** The issues at stake in the action are of great public importance as they involve a policy enacted at the highest level of the federal government that received broad public attention. Plaintiffs, two of whom were minors at the time in question, have alleged that they suffered torture, inhumane treatment, severe emotional trauma, and other harms, some of which may be permanent. As such, the potential damages are substantial. Information relevant to Plaintiffs' claims is in the possession of government officials and individually-named Defendants.

Given the non-public nature of the policymaking process, Plaintiffs have minimal access to that information without the use of discovery as permitted under the Federal Rules of Civil Procedure. Given these factors, the burden and expense of the proposed discovery below does not outweigh its likely benefit in permitting the parties to efficiently resolve the case through settlement discussions or trial.

Defendants have agreed to produce Common Discovery, which refers to all documents to date produced in *A.P.F. v. United States*, No. 20-cv-00065-PHX (D. Ariz.), and *C.M. v. United States*, No. 19-cv-05217-PHX (D. Ariz.) that are not specific to the plaintiffs in those cases. Plaintiffs appreciate Defendants willingness to produce Common Discovery, as they have done twice in parallel litigation. However, Defendants' conditions that 1) discovery shall be stayed until their Motion to Dismiss is resolved and 2) that Plaintiffs must justify their need for additional policy-level discovery on grounds beyond those provided by Federal Rule of Civil Procedure 26(b)(1) are inconsistent with this Court's Standing Order, unnecessarily delay discovery, and impose additional limitations on Plaintiffs' discovery rights without justification. Plaintiffs' position is further explained in their Response to Defendants' Notice. *See* ECF No. 37.

**Defendant's Position:** The Defendant has already agreed to produce records relating to the national policy issues which are at the heart of this litigation within 4 weeks of a stay being entered with respect to all remaining discovery pending resolution of its Motion to Dismiss. *See* ECF No. 35. These documents, referenced in all child-separation litigation across the country as "common discovery," were compiled by the United States in response to the first child separation case filed in the District of Arizona – *C.M. v. United States*, 19-cv-5217.  The common discovery productions cover most of the topic areas identified below by Plaintiffs as requiring discovery and spans over 60,000 pages of documents.  The United States further notes that the discovery sought

9

by Plaintiffs may be subject to attorney-client privilege, work product protection, governmental privileges, including but not limited to the deliberative process privilege, law enforcement privilege, executive privilege, and other applicable privileges.

    b.    Plaintiffs anticipate that discovery will be needed on, but not limited to, the following:

- The creation, development, and implementation of the federal government's family separation policy/decision to separate large numbers of families at the Southern border, including any pilot programs involving family separation;

- The reasons and motivation underlying the government officials' and individually-named Defendants' decisions to implement the family separation policy/decision to separate large numbers of families at the Southern border;

- Government officials' and individually-named Defendants' knowledge that separating children from parents would cause the parents and children emotional and mental harm and trauma;

- The connection, if any, between the family separation policy/decision to separate large numbers of families at the Southern border and the "Zero Tolerance" policy;

- Government officials' and individually-named Defendants' consideration of the impact of the family separation policy/decision to separate large numbers of families at the Southern border on future immigration flows into the United States;

- Government policies and practices, including considerations taken by individually-named Defendants, concerning the care of persons in immigration detention;

- Government policies and practices concerning the care of children in the custody of the U.S. Office of Refugee Resettlement (ORR), including the policies and

practices of the facilities that contracted with ORR and provided care for Viky and J.S.R.;

- Government officials' and individually-named Defendants' knowledge about government policies and practices concerning the care of children in the custody of ORR, including the policies and practices of the facilities that contracted with ORR and provided care for Viky and J.S.R.;

- Government policies and practices, including considerations taken by individually-named Defendants, if any, regarding the tracking of children separated under the family separation policy/decision to separate large numbers of families at the Southern border;

- Government policies and practices, including considerations taken by individually-named Defendants, if any, regarding communication between parents and children separated under the family separation policy/decision to separate large numbers of families at the Southern border;

- Government policies and practices, including considerations taken by individually-named Defendants, if any, regarding the reunification of parents and children separated under the family separation policy/decision to separate large numbers of families at the Southern border;

- Government officials' and individually-named Defendants' decisions to separate Ms. Benitez Alvarado from Viky, and Mr. Santos Galvez from J.S.R.;

- Government officials' and individually-named Defendants' decisions whether to prosecute Ms. Benitez Alvarado and Mr. Santos Galvez under 8 U.S.C. § 1325 or any other statute;

- The manner in which government officials and individually-named Defendants carried out the separation of Ms. Benitez Alvarado from Viky, and Mr. Santos Galvez from J.S.R.;

- Government officials' and individually-named Defendants' decisions regarding where to place Viky and J.S.R., including the decision to place them in shelters far from their parents;

- Government officials' and individually-named Defendants' actions, if any, to track Viky and J.S.R. after they were separated from Ms. Benitez Alvarado and Mr. Santos Galvez;

- Government officials' and individually-named Defendants' actions, if any, to ensure that Ms. Benitez Alvarado and Mr. Santos Galvez were or were not deported without their children;

- Government officials' and individually-named Defendants' actions, if any, to provide means of communication between Ms. Benitez Alvarado with Viky, and Mr. Santos Galvez with J.S.R., after the separation;

- Government officials' and individually-named Defendants' actions, if any, regarding the reunification of Ms. Benitez Alvarado with Viky, and Mr. Santos Galvez with J.S.R.;

- The conditions of the government or government-contracted facilities in which the government detained Ms. Benitez Alvarado, Viky, Mr. Santos Galvez, and J.S.R;

- Government officials' treatment of Ms. Benitez Alvarado, Viky, Mr. Santos Galvez, and J.S.R., during the course of their respective detentions; and

- Information in the government's and individually-named Defendants' possession concerning physical, medical, and psychological harms suffered by each of the Plaintiffs as result of their separation.

c. Defendant Intends to Seek Discovery on:

- Information regarding the Plaintiffs' living conditions and economic circumstances prior to unlawfully entering the United States;

- Information regarding Plaintiffs' entries into the United States and their apprehensions(s);

- Information regarding Plaintiffs' pre-existing medical conditions and history;

- Information regarding communications and other contacts between Plaintiffs during their separations;

- Information regarding communications and other contacts Plaintiffs had with anyone during their separations;

- Information regarding the facts surrounding the claims made in the complaint;

- Information regarding the alleged physical, medical, mental, emotional and/or psychological harms allegedly sustained by Plaintiffs as a result of their separations;

- Information regarding Plaintiff's employment history in connection with any claim for loss of income;

- Information regarding Plaintiffs' experts; and

- The Defendant also anticipates moving for independent psychological examinations of all Plaintiffs.

  c. Plaintiffs propose that Defendants produce Common Discovery in four weeks; policy-level discovery is stayed for ninety days from the production of Common Discovery; and Plaintiff-specific discovery is stayed for four weeks, i.e., until the anticipated production of Common Discovery. *See* ECF No. 37. Plaintiffs further propose that all discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be completed (not propounded) by May 15, 2024. Defendant proposes that a Case Management Plan with these deadlines can be entered after a ruling on the Motion to Dismiss.

  d. Discovery will not be conducted in phases.

  f. Plaintiffs anticipate the need to take a total of 25 depositions of fact witnesses, a number consistent with that in other family separation cases being litigated in other courts. Plaintiffs anticipate that they will take the depositions of approximately 15 fact witnesses specific to Plaintiffs' claims and approximately 10 policy-level depositions, which is consistent with the depositions ordered in *A.P.F. v. United States,* No. 20-cv-00065-PHX (D. Ariz.), and *C.M. v. United States*, No. 19-cv-05217-PHX (D. Ariz.) Plaintiffs are amenable to limiting the scope of policy-level depositions if transcripts from other family separation cases are produced and sufficiently address the matters at issue in this case; to date, Defendants have not offered to produce such transcripts.

  In the event the Court permits discovery, including depositions, Defendant does not agree to Plaintiffs taking more than 10 depositions of fact witnesses. Defendant also disagrees with Plaintiffs' representation that it would be "consistent" with other family separation cases to allow Plaintiffs to take 25 fact witness depositions. The first child separation cases to engage in discovery were filed in the District of Arizona. The Court in *C.M. v. United States,* 19-cv-05217 (brought by 5 minor plaintiffs and 5 adult plaintiffs) allowed for 15 fact witness depositions and

14

*A.P.F. v. United States,* 20-cv-00065 (brought by 6 minor plaintiffs and 6 minor children) allowed for 18 fact witness depositions. However, the *C.M.* and *A.P.F.* Court only allowed for a combined total of 12 policy-related depositions. Since that time, many of the other family separation cases pending across the country have not reached the stage of engaging in terms and limits of discovery. However, several cases have, and in those cases, the parties agreed not to take policy-related depositions overlapping with previously-conducted discovery (instead relying on the transcripts from the *C.M.* and *A.P.F.* cases) and have agreed to limit fact discovery depositions to 10 for each side. As there are only 4 plaintiffs in this case, 2 of whom were minors at the times alleged in the complaint, fact discovery witnesses should be limited to 10 for both sides.

Defendant will require a total of 10 depositions of fact witnesses. Defendant proposes that a Case Management Plan with deposition deadlines can be entered after a ruling on the Motion to Dismiss.

The parties agree that each deposition shall be subject to the presumptive limit of one day of seven hours as provided in Fed. R. Civ. P. 30(d)(1). To the extent that Defendant seeks to depose Plaintiff J.S.R., a minor, the parties will confer regarding appropriate limitations for this deposition.

  g.  The parties will not request permission to serve more than 25 interrogatories.

  h.  Plaintiffs intend to call expert witnesses at trial. If and when discovery is ordered, Defendant intends to call expert witnesses at trial.

  i.  Plaintiffs propose that the parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by February 15, 2024. Depositions of any such experts will be completed by March 15, 2024.

Defendant proposes that a Case Management Plan with expert disclosure deadlines can be entered after a ruling on the Motion to Dismiss.

j.   Plaintiffs propose that the parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by April 15, 2024. Depositions of any such experts will be completed by May 15, 2024.

Defendant proposes that a Case Management Plan with expert disclosure deadlines can be entered after a ruling on the Motion to Dismiss.

k.   A damages analysis will be provided by any party who has a claim or counterclaim for damages 14 days after the production of Common Discovery.

l.   Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agree that the terms of ECF No. 31-2, ESI Protocol, should govern electronically stored information.

Disclosure of documents is dependent on the execution of privacy waivers by each Plaintiff and the entry of the protective order proposed by the parties.  The parties also agree to effectuate service of disclosures electronically between counsel of record for the parties, with any documents

exchanged bearing unique bates-stamping numbering on each page. Documents produced from the *CM* and *APF* litigation will bear the original bates-stamping from productions in those cases.

The parties acknowledge their duty to preserve relevant materials in accordance with applicable rules and case law.

m.     Undersigned counsel (after consultation with their clients) have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. To the extent non-electronic records exist, the parties agree that production shall proceed as under Rule 34 in the typical course in electronic (Adobe pdf format), subject to any necessary meet-and-confer to resolve unanticipated issues of expense or duplication.

n.     Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures outlined in Federal Rules of Evidence 502 for asserting claims of privilege after production and have proposed an agreed upon 502(d) Order for the Court's consideration and entry.

### G.     **Summary Judgment Motions**

Summary judgment motions will be filed 90 days after the close of discovery.

### H.     **JOINT TRIAL MEMORANDUM**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within 60 days after the entry on the ruling of the last dispositive motion. If dispositive motions are not filed, the joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 60 days after the completion of all discovery.

### VI.   **TRIAL READINESS**

The case will be ready for trial 60 days from the filing of the Joint Trial Memorandum.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Date: November 28, 2022     /s/ Muneer I. Ahmad
Muneer I. Ahmad (ct28109)
Kirby Tyrrell (phv206703)
Amanda Gómez Feliz, Law Student Intern
Juan Fernando Luna, Law Student Intern
Gabriela Monico, Law Student Intern
Fernando Rojas, Law Student Intern
Tanveer Singh, Law Student Intern
Worker and Immigrant Rights Advocacy Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 902020
New Haven, Connecticut 06520-9090
Email: muneer.ahmad@ylsclinics.org
Email: kirby.tyrrell@ylsclinics.org
Phone: (203) 432-4800

*Counsel for Plaintiffs*

Date: November 28, 2022     VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Carolyn A. Ikari*
Carolyn Ikari (ct13437)
Assistant U.S. Attorney
450 Main Street, Room 328
Hartford, Connecticut 06103
Email: carolyn.ikari@usdoj.gov
Phone: (860) 760-7953

*Counsel for Defendant*