UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VIKY SARAI FLORES BENITEZ, <br> ANA DELMI BENITEZ ALVARADO, <br> JAVIN BENIGNO SANTOS GALVEZ, <br> and J.S.R., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civ. No. 3:22CV884(JCH) <br><br><br><br><br><br><br><br><br><br> JANUARY 11, 2023 |

**DEFENDANT UNITED STATES OF AMERICA'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rule 7, D. Conn. L. Civ. R., the defendant United States of America respectfully submits this reply memorandum of law in response to Plaintiffs' brief, ECF No. 49, and in support of Defendant's motion to dismiss, ECF No. 35.

**I.   PLAINTIFFS' NOVEL ARGUMENTS REGARDING THE ALIEN TORT STATUTE ARE NOT GROUNDED IN THE LAW.**

Plaintiffs contend that their claims of torture and crimes against humanity are *jus cogens*[1] norms of international law with respect to which the Government does not have sovereign immunity. Plts' Br., ECF No. 49 at 57-62.[2] They argue that the Government does not enjoy

---

[1] A mandatory or peremptory norm of general international law accepted and recognized by the international community as a norm from which no derogation is permitted. Jus Cogens Definition, Black's Law Dictionary (11th ed. 2019).

[2] Page numbers refer to the CM/ECF pagination according to the pleading's header.

**ORAL ARGUMENT IS REQUESTED**

immunity in federal courts for *jus cogens* violations and that, even if it did, it has "impliedly" waived such immunity. *Id.* at 60.

The fundamental principle that the "United States, as sovereign, is immune from suit save as it consents to be sued," *United States v. Mitchell*, 445 U.S. 535, 538 (1980), is not a recent innovation. The Supreme Court nearly two hundred years ago described the principle that the United States may not be sued without its consent as "universally received opinion." *Cohens v. Virginia*, 19 U.S. 264, 411-412 (1821).

Plaintiffs urge this court to follow Judge Brinkema of the Eastern District of Virginia in the novel holding in a wholly unrelated case that sovereign immunity is not available because violation of *jus cogens* norms is not "sovereign" in nature. ECF No. 49 at 57-59; *see Al Shimari v. CACI Premier Tech., Inc.*, 368 F. Supp. 3d 935 (E.D. Va. 2019). But as the United States established in its principal brief, ECF No. 35-1 at 23-24, the overwhelming weight of authority confirms that the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, does not contain a waiver of sovereign immunity, even when violation of *jus cogens* standards is alleged. "[A]s almost every court to consider the question has held, the United States is immune from suit under the ATS, even for alleged violations of *jus cogens* norms. . ." *D.J.C.V. v. United States*, No. 20 CIV. 5747 (PAE), 2022 WL 1912254, at *28 (S.D.N.Y. June 3, 2022) (collecting cases).; *see, e.g., Smith v. Scalia*, 44 F. Supp. 3d 28, 39 (D.D.C. 2014); *Gonzalez-Vera v. Kissinger*, No. 02-cv-2240 (HHK), 2004 WL 5584378, at *4-5 (D.D.C. 2004).

Nor is there support for Plaintiffs' second argument that *jus cogens* supersedes the well-settled law of sovereign immunity, waiver of sovereign immunity, and subject matter jurisdiction. *See* ECF 49 at 59-60. The mere fact that international laws and norms exist does not amount to there being remedies with respect to those rights in federal court—especially against a sovereign

who has not waived its immunity. International law is not "a self-executing code that trumps domestic law whenever the two conflict." *United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991). "[T]he role of judges . . . is to enforce the Constitution, laws, and treaties of the United States, not to conform the law of the land to norms of customary international law." *Id.*; *see also United States v. Yousef*, 327 F.3d 56, 91 (2d Cir. 2003) ("United States law is not subordinate to customary international law or necessarily subordinate to treaty-based international law").

International law does not by itself, without some basis in domestic law, create legal rights or obligations enforceable in United States courts. "[N]ot all international law obligations automatically constitute binding federal law enforceable in United States courts." *Medellin v. Texas*, 552 U.S. 491, 504 (2008). For example, non-self-executing treaties are not judicially enforceable absent implementing legislation. *Id*. at 520-521. "Even when treaties are self-executing in the sense that they create federal law, the background presumption is that international agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts." *Id.* at 506 n.3 (internal quotation omitted).

Finally, Plaintiffs assert an "implied" waiver of sovereign immunity. ECF No. 49 at 60. This is squarely contrary to the elementary concept that only Congress can waive the Government's sovereign immunity and it must do so expressly. *See, e.g., Mitchell*, 445 U.S. at 538; *e.g.*, *Binder & Binder*, 818 F.3d 66, 70 (2d Cir. 2016); *D.J.C.V. v. United States*, 2022 WL 1912254, at *28 (rejecting *Al Shimari* and noting "[b]edrock principles of sovereign immunity require an express waiver."). Nor has sovereign immunity been waived merely because the United States is a member of the international community. ECF No. 49 at 60-62. The Second Circuit has determined that the mere existence in the community of nations is insufficient to implicitly waive

3

immunity. *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 244 (2d Cir. 1996) (applying the Foreign Sovereign Immunities Act to foreign sovereign immunity). Plaintiffs' argument boils down to the notion that the United States' mere existence waives its sovereign immunity—a conclusion that cannot be squared with the centuries-old principle that the United States is immune from suit except as it consents to be sued.

## II.  THE ALLEGATION OF A CONSTITUTIONAL VIOLATION DOES NOT DEFEAT THE DISCRETIONARY FUNCTION EXCEPTION

Plaintiffs cannot avoid application of the discretionary function exception ("DFE") simply by alleging violation of a constitutional right. *See* ECF No. 49 at 21-27. Congress did not create the FTCA to address constitutional violations, but rather to provide compensation for state law torts committed by federal employees. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim").

As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986). Thus, any argument that constitutional violations can defeat the DFE is inapplicable to Plaintiffs' negligence claims.  The Supreme Court has explained that, when "a federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow," there is no further discretion to exercise. *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (emphasis added). Thus, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, rather only by a showing that the government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. Although *Gaubert* requires both specificity and a clearly established right, courts applying *Gaubert* have left unanswered what level of specificity in the constitutional provision is necessary to defeat application of the exception, and whether the

4

putative constitutional right at issue must have been clearly established at the time of the challenged conduct See *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the discretionary function exception); *Loumiet v. United States*, 828 F.3d 935, 946 (D.C. Cir. 2016) (remanding to the district court to decide in the first instance whether the conduct at issue violated clearly established constitutional right); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) (holding the discretionary function exception did not apply where there was "a *clear* violation of due process.") (emphasis added); *see also Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").[3] Whatever the precise standard, it is not satisfied here.

As explained in Defendant's principal brief, the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478 (1978), and subsequent decisions leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE. *See* ECF No. 35-1 at 36; *see, e.g., Tabman v. F.B.I.*, 718 F. Supp. 2d 98, 105 (D.D.C. 2010).

Moreover, since *Butz*, the Supreme Court has expressly held that government officials who exercise discretionary functions are entitled to qualified immunity under certain circumstances in

---

[3] Some Courts of Appeals have not addressed the definitional aspects of specificity and a clearly established right, because they have held that there is no articulation of a constitutional violation sufficient to defeat the DFE. *See Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021) ("[T]he statutory text of the discretionary function exception is unambiguous and categorical . . . Congress left no room for the extra-textual 'constitutional-claims exclusion' for which Shivers advocates.") (citations omitted); *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (on reh'g en banc, reversing its prior holding) (government is protected from suit by DFE even if constitutional violation is involved); *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972) (military base commander's decision to prohibit civilian employee entering base protected by discretionary function exception, even though it was "constitutionally repugnant" and violated First Amendment).

damages suits for violating the Constitution while exercising their discretion. In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken. *Id*. at 1866 (citations omitted). Thus, the Supreme Court has long recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution. Plaintiffs cite the Second Circuit's decision in *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975), where the court explained that it is a tautology that federal officials cannot have discretion to behave unconstitutionally or outside the scope of delegated authority. *See* ECF 49 at 24, 26. But federal officials do not have discretion to behave in a way that violates *any* law – not just the Constitution. This is what renders the above statement a tautology. *Myers* does not stand for the proposition that any allegation of a constitutional violation defeats the DFE. Plaintiffs' allegations and their opposition brief do not state what "clearly established" right was violated here. Plaintiffs refer generally to a right to "family integrity" in their brief, ECF No. 49 at 25, 33, but do not identify any specific directive that removed an official's discretion. Plaintiffs instead rely on the district court's decisions in *D.J.C.V.*, 2022 WL 1912254, at *28, and *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1142 (S.D. Cal. 2018) to satisfy their burden. ECF No. 49 at 33.[4] Even assuming the holdings in the cited cases excuse Plaintiffs from satisfying their burden (they do not), the holdings post-date the conduct at issue in this case, rendering them immaterial to whether those rights were clearly established at the time of the challenged conduct. And in *Ms. L.* it also arises in the context of a

---

[4] Plaintiffs also cite two cases that do not involve detainees and thus are inapposite. *See* ECF 49 at 25 (citing *Troxel v. Granville*, 530 U.S. 57 (2000) (visitation rights of grandparents); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (right to give children religious training and encourage them in the practice of religious belief)).

preliminary injunction, where the district court held only that "the context and circumstances in which this practice of family separation were being implemented support a finding that Plaintiffs have a likelihood of success on their due process claim." *Id.* at 1143. And decisions of district judges do not demonstrate that a right is "clearly established." *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011); *see also Sharp v. Cnty. of Orange,* 871 F.3d 901, 911 (9th Cir. 2017).

Accordingly, the DFE bars Plaintiffs' claims.

### III. THE COMPLAINT ALLEGES THE ZERO TOLERANCE POLICY AMOUNTED TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, WHICH IS A "SYSTEMIC TORT" NOT COMPENSABLE UNDER THE FTCA

Plaintiffs claim that Defendant is liable for intentional infliction of emotional distress ("IIED") "by carrying out a policy designed to cause suffering by separating the parents from their minor children. . ." Complaint, ECF No. 1, ¶ 218. That is, they allege that the requisite intent to commit this tort rests with the policymakers. *Id.* ¶¶ 99 – 189 (section captioned "The U.S. Government's Family Separation Policy Was Deliberately Cruel and Inhumane").

Under the FTCA, liability arises when the tortfeasor is "any employee of the Government," acting within the scope of his employment, for which he could otherwise be held personally liable. 28 U.S.C. § 1346(b)(1). With respect to the adoption and implementation of the alleged family separation policy, Plaintiffs have failed to allege that there is any federal employee responsible for all elements of the claimed tort and cannot seek to hold the government as a whole or its agencies liable for its policies. *Contrast* ECF No. 49 at 31-32 (repeatedly citing ECF No. 1 ¶¶ 27-32, 47-55, 65-70, 85-93) *and* ECF No. 1 ¶¶ 99 – 189. "To the extent the Complaint can be read to assert claims against the United States for the tortious misconduct of the government itself or government agencies, *i.e.*, claims based on executive orders, memoranda, or policies regarding the separation of families entering the United States without authorization, the Court would be correct in

dismissing the claims for lack of subject-matter jurisdiction because the FTCA waives sovereign immunity only for the tortious misconduct of individual government employees." *E.C.B. v. United States*, Civ. No. 2:22-cv-00915-CDB, slip op. at 9 (D. Ariz. Nov. 8, 2022), ECF No. 41-1; *Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking. That principle requires a federal court to dismiss an FTCA claim about government officials' intent or decisionmaking process that resolving the claim would require judicial inquiry into those subjective matters.").

Thus, Plaintiffs' claim of IIED arising from agency-wide policy and operations falls outside the scope of FTCA's waiver of immunity, and subject matter jurisdiction is lacking.

This limitation has also been applied in other border separation cases. *See, e.g., Fuentes-Ortega v. United States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *5 (D. Ariz. Nov. 14, 2022) (dismissing amended complaint to the extent it may be read to allege misconduct of government agencies); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022) ("To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims."); *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3 (D. Ariz. July 22, 2022) ("The FTCA does not waive sovereign immunity for the tortious acts or omissions of the entire government or an entire agency writ large.").

Accordingly, this court lacks subject matter jurisdiction over Plaintiffs' claim of IIED arising from the alleged agency-wide policy of separating parents from their minor children.

## IV. THE ALLEGATIONS OF THE COMPLAINT FAIL TO STATE A CLAIM FOR FALSE IMPRISONMENT

Plaintiffs nowhere dispute that the United States had probable cause for their arrest. Nevertheless, they argue that "even assuming that Plaintiffs' initial arrest was lawful," they have

stated a claim for false imprisonment because they allege (1) "lengthy detention," and (2) violation of Due Process arising from the alleged motivation of general deterrence. ECF No. 49 at 47-48. However, none of these allegations nullify the requirement that Plaintiffs establish the absence of probable cause.

Under both Texas and Connecticut law, there is no tort for false imprisonment arising from a continuation of detention following an arrest based on probable cause. Specifically, under Connecticut law, the applicable law for false arrest and false imprisonment is identical. *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996). The absence of both probable cause and a facially valid warrant is a required element. *Lo Sacco v. Young*, 20 Conn. App. 6, 21 (1989). Similarly, under Texas law, false imprisonment is a single, continuing tort, arising on the first day of detention and ceasing on the last. *Adler v. Beverly Hills Hosp*. 594 S.W.2d 153, 155–56 (Tex. Civ. App. 1980). Thus, a lack of probable cause upon the initial arrest is a required element. *Holguin v. Lopez*, 584 F. Supp. 2d 921, 929 (W.D. Tex. 2008).

Plaintiffs' other point is a red herring. Plaintiffs argue that because the alleged motivation for the Zero Tolerance Policy was general immigration deterrence, their continued detention violated Due Process. ECF 49 at 47-48 (twice quoting *Zadvydas v. Davis*, 533 U.S. 678 (2001), which addressed constitutional limitations of potentially indefinite immigration detention of noncitizens with final orders of removal). A claimant proceeding under the FTCA must establish all required elements of the tort under state law. *See* 28 U.S.C. § 1346(b). The constitutional dimension of continued immigration detention does not alter or excuse the required elements of the tort of false imprisonment. Plaintiffs' attempt to make a coincident argument arising from the Constitution does not excuse their inability to state a claim upon which relief can be granted.

In sum, far from being "beside the point," as Plaintiffs' assert, ECF No. 49 at 47, the existence of probable cause for their arrest, which is undisputed, is fatal to their claim of false imprisonment.

## V.  THERE IS NO BASIS FOR NULLIFYING THE WESTFALL SUBSTITUTIONS

Plaintiffs invoke an exception to the Westfall Act for civil actions against an employee of the Government "which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." ECF No. 49 at 50-54; *see* 28 U.S.C. § 2679(b)(2)(B). In other words, a civil action against a federal actor is not displaced by FTCA's exclusive remedy provision if a U.S. statute authorizes a private cause of action against individuals.

In this case, Plaintiffs point to the ATS as the statute "under which such action against an individual is otherwise authorized." ECF No. 49 at 49-54. The ATS reads in full: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATS itself imposes no substantive norms, so a plaintiff cannot sue for a "violation of" the ATS, as the Westfall Act exception requires. *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017); *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1329 (D.C. Cir. 2014); *see* 28 U.S.C. § 2679(b)(2)(B). Because Plaintiffs' First Claim, ECF No. 1 ¶¶ 200-214, falls within the broad "negligent or wrongful omission" language that bars tort suits, 28 U.S.C. § 2679(b)(1), but not within the statutory exception, substitution of the United States under the Westfall Act is appropriate.

Plaintiffs also argue that the individual defendants' actions are outside the scope of the individual defendants' employment. ECF No. 49 at 54-57. That, too, is wrong. "[S]cope of office or employment" within the meaning of the FTCA uses the standard found in state respondeat superior law. *Fountain v. Karim*, 838 F.3d 129, 133 n.3 & 135 (2d Cir. 2016).

10

Under Texas law, an act is within the scope of employment if it is done (1) within the employee's general authority, (2) in furtherance of the employer's business, and (3) for the accomplishment of the objective for which the employee was employed. *Rodriguez v. Sarabyn*, 129 F.3d 760, 767 (5th Cir. 1997) (citations omitted). An employee's acts fall within the scope of their employment even if the employer would not have approved of those acts, if those acts were not authorized by the employer, or if they are contrary to the express orders of the employer. *Id.*[5] Here, there is no real dispute that the alleged actions of the four individual defendants were performed on the job, in furtherance of official government business. *See* ECF No. 1 ¶¶ 20-23, 99-189.

Plaintiffs argue that "[b]ecause the *jus cogens* violations of torture and inhumane treatment can never be authorized as official acts, they cannot fall within the scope of office or employment." ECF No. 49 at 55. But the conclusion that the individual defendants were acting within the scope of employment as federal government officials is in no way undermined by Plaintiffs' reliance on international law. Plaintiffs' argument parallels the soundly-rejected argument that because an employee is not authorized or hired for the purpose of committing torts, such violations of law must be outside the scope of employment. *See, e.g., Johnson v. Carter*, 983 F.2d 1316, 1323 (4th Cir. 1993), *overruled on other grounds by Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995); *Smith v. Clinton*, 886 F.3d 122, 126-27 (D.C. Cir. 2018); *see also* ECF No. 49 at 50, 55 (arguing

---

[5] The test under Connecticut law is essentially the same: courts look to whether the employee's conduct: "[1] occurs primarily within the employer's authorized time and space limits; [2] is of the type that the employee is employed to perform; and [3] is motivated, at least in part, by a purpose to serve the employer." *Karlen v. Uber Techs., Inc.,* No. 3:21-CV-835 (VAB), 2022 WL 3704195, at *3 (D. Conn. Aug. 27, 2022) (following *Fiano v. Old Saybrook Fire Co. No. 1*, 332 Conn. 93, 101–02 (2019)).

11

that the individual defendants were not authorized to engage in torture or inhumane treatment, so the conduct necessarily falls outside the scope).

Unsurprisingly, courts have routinely held that allegations of misconduct, even those that allegedly violate international law, do not *per se* fall outside the scope of employment under the Westfall Act. In *Harbury v. Hayden*, 444 F. Supp. 2d 19, 31-32 (D.D.C. 2006), for example, the plaintiff argued that allegations of torture *per se* fall outside the scope of employment because torture indisputably violates international law. The district court rejected that argument because scope of employment questions under the Westfall Act are determined by state law, not international law. *Id.* at 32. Further, "[d]efining an employee's scope of employment is not a judgment about whether alleged conduct is deleterious or actionable; rather, this procedure merely determines *who* may be held liable for that conduct, an employee or his boss." *Id.* (quoting *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 265 (D.D.C. 2004) (emphasis in original), *aff'd,* 522 F.3d 413, 422 (D.C. Cir. 2008); *see also Rasul v. Myers*, 512 F.3d 644, 659 (D.C. Cir. 2008) ("[T]he allegations of serious criminality do not alter our conclusion that the defendants' conduct was incidental to authorized conduct."), *cert. granted, judgment vacated,* 555 U.S. 1083 (2008), *reinstated in relevant part,* 563 F.3d 527, 528-29 (D.C. Cir. 2009); *Saleh*, 848 F.3d at 892 ("When the *Westfall* Act was passed, it was clear that this immunity covered even heinous acts.").

This extends to *jus cogens* violations. "[A] *jus cogens* categorization is an indication of an act's wrongfulness, not evidence of the actor's employment status." *Gallegos v. United States*, No. 5:14-CV-136, slip op. at *34 (S.D. Tex. Sept. 15, 2021) (copy attached).

In *Saleh*, for example, the plaintiff made the same argument advanced by Plaintiffs: that Westfall immunity is unavailable because the plaintiff alleged violation of a *jus cogens* norm of international law. 848 F.3d at 887. The Ninth Circuit rejected that argument because Westfall Act scope of employment questions are determined by state law, not international law, and thus, "the

treaties and charters cited by Plaintiff do not alter our conclusion that the Westfall Act, by its plain terms, immunizes Defendants from suit." *Id.* at 891-92; *see also Martinez-Lopez v. Gonzalez*, 454 F.3d 500, 502 (5th Cir. 2006) ("International customs, however, cannot override congressional intent as expressed by statute.") (citation omitted). Westfall immunity is available "even when such immunity is inconsistent with principles of international law." *Saleh,* 848 F.3d at 893, *accord Ali v. Rumsfeld*, 649 F.3d 762, 774-75 (D.C. Cir. 2011) (rejecting argument that Westfall Act does not cover "egregious torts that violate *jus cogens* norms"); *Ameur v. Gates*, 950 F. Supp. 2d 905 (E.D. Va. 2013) ("Plaintiff's argument that *jus cogens* violations sufficiently rebut the Attorney General's certification is equally unavailing."), *aff'd on other grounds* 759 F.3d 317 (4th Cir. 2014).

Plaintiffs also argue that the *Charming Betsy* canon dictates that state law conform itself to international law on the question of scope of employment. *See* ECF 49 at 56; *see also Murray v. Schooner Charming Betsy*, 6 U.S. 64, 118 (1804) (recognizing that "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains."). The United States is not aware of any case applying the *Charming Betsy* canon to state law (or the Westfall Act for that matter), and Plaintiffs have not cited to any. In any event, Plaintiffs' reasoning is flawed. Substituting the United States for the individual defendants under the Westfall Act does nothing to violate international norms, nor is abrogating state law necessary in order to prevent such a violation. Plaintiffs assert that the Convention Against Torture ("CAT") provides that signatories ensure that, in their legal system, victims of torture obtain redress and have an enforceable right to fair and adequate compensation. ECF 49 at 57.  But the substitution of the United States does not result in any violation of this obligation, assuming it is enforceable here. This segment of the CAT ensures avenues to redress, but does not guarantee recovery against any particular person or entity.

For the foregoing reasons, neither Plaintiffs' citation to the ATS nor their invocation of international law change the scope of employment inquiry. Accordingly, there is no basis to second-guess the certifications of scope of employment. *See* ECF No. 34. Nor is there any basis to disturb the substitution of the United States, which is in accord with Congress' express directive to make the FTCA an exclusive remedy in cases like this. *See* 28 U.S.C. § 2679.

For the foregoing reasons and the reasons set forth in the Defendant's principal brief, the motion to dismiss should be granted in its entirety.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

MICHELLE L. McCONAGHY
CHIEF, CIVIL DIVISION

JOHN W. LARSON
CHIEF, DEFENSIVE UNIT

*/s/ Carolyn A. Ikari*
CAROLYN A. IKARI
ASSISTANT U.S. ATTORNEY
450 Main Street, Rm. 328
Hartford, Connecticut 06103
(860) 947-1101
Fed. Bar No. ct13437
carolyn.ikari@usdoj.gov