**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VIKY SARAI FLORES BENITEZ,<br>ANA DELMI BENITEZ ALVARADO,<br>JAVIN BENIGNO SANTOS GALVEZ,<br>and J.S.R., a minor,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | **Case No. 3:22-cv-00884(JCH)** |

**SECOND REPORT OF PARTIES' RULE 26(f) PLANNING MEETING**

Date Complaint Filed: July 13, 2022

Date Complaint Served on Defendants:

| | |
|---|---|
| United States | August 10, 2022 |
| Jefferson B. Sessions | August 10, 2022 |
| Kevin McAleenan | August 10, 2022 |
| Stephen Miller | September 15, 2022 |
| Kirstjen Nielsen | October 3, 2022 |

Date of Defendant's Appearance: October 5, 2022 (United States)

On October 28, 2022, Defendants filed a notice substituting the United States for the individual defendants. *See* ECF No. 34. The Court affirmed this substitution on August 17, 2023 in its Ruling on Defendant's Motion to Dismiss. *See* ECF No. 86. [1]

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on October 13, 2022. The participants were:

[1] Plaintiffs reserve the right to appeal the Court's dismissal of certain claims, *see* ECF No. 86, but have prepared this revised Rule 26(f) report based on the claims as to which the Court denied the Defendant's motion to dismiss and their claim for negligent infliction of emotional distress, which Plaintiffs intend to replead in their forthcoming amended complaint.

Attorney Muneer I. Ahmad (ct28109)
Attorney Kirby Tyrrell (phv206703)
Amanda Gómez Feliz, Law Student Intern
Juan Fernando Luna, Law Student Intern
Gabriela Monico, Law Student Intern
Fernando Rojas, Law Student Intern
Tanveer Singh, Law Student Intern
Worker and Immigrant Rights Advocacy Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 902020
New Haven, Connecticut 06520-9090
Email: muneer.ahmad@ylsclinics.org
Email: kirby.tyrrell@ylsclinics.org
Phone: (203) 432-4800

For the Plaintiffs, Viky Sarai Flores Benitez, Ana Delmi Benitez Alvarado, Javin Benigno Santos Galvez, and J.S.R.

Assistant U.S. Attorney Carolyn A. Ikari (ct13437)
Assistant U.S. Attorney Michelle McConaghy
Assistant U.S. Attorney John Larson
Assistant U.S. Attorney Nathaniel Putnam
Office of the U.S. Attorney
450 Main Street, Room 328
Hartford, Connecticut 06103
Email: carolyn.ikari@usdoj.gov
Phone: (860) 760-7953

For the Defendant, United States of America.

On September 5, 2023, following the Court's disposition of the Defendant's Motion to Dismiss, *see* ECF No. 86, counsel for the parties conferred by telephone regarding a revised Rule 26(f) report. The Court has scheduled a case management conference on September 6, 2023.

## I. CERTIFICATION

Undersigned counsel, after consultation with their clients, certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the

following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. JURISDICTION

### A. SUBJECT MATTER JURISDICTION

The Plaintiffs claim that the Court has subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§ 1331, 1346(b), and 1350.

Defendant, the United States of America, asserts that the Court lacks subject matter jurisdiction for the reason that Congress has not waived the federal government's sovereign immunity from claims for money damages in the circumstances presented in this case. The United States of America has been substituted as the proper party defendant for formerly named Defendants Stephen Miller, Jefferson B. Sessions, Kirstjen Nielsen and Kevin McAleenan. ECF No. 34.

On August 17, 2023, the Court ruled that it has subject matter jurisdiction over Plaintiffs' abuse of process, negligence, intentional infliction of emotional distress, and false imprisonment[2] claims brought under the Federal Torts Claims Act ("FTCA"). The Court ruled that it does not have subject matter jurisdiction over Plaintiffs' negligent infliction of emotional distress claim under the FTCA nor over Plaintiffs' claims under the Alien Tort Statute ("ATS"). ECF No. 86.

### B. PERSONAL JURISDICTION

Personal jurisdiction is not contested.

## III. BRIEF DESCRIPTION OF CASE

### A. Claims of Plaintiffs

In Summer 2018, Defendants and other U.S. government employees separated fourteen-

[2] Plaintiffs' false imprisonment claim was dismissed on other grounds. ECF No. 86.

year-old Viky Sarai Flores Benitez from her mother, Ana Benitez Alvarado, and nine-year-old J.S.R. from his father, Javin Benigno Santos Galvez, in an attempt to coerce the two families to abandon their asylum claims and to deter others fleeing violence and danger in Central America from seeking refuge in the United States. Employees of Defendant United States then sent both children thousands of miles away to Connecticut while incarcerating each parent in Texas and preventing communications between parent and child.

Plaintiffs allege that the United States is liable for torts suffered by Plaintiffs during and as a result of the family separation under the FTCA. Plaintiffs allege that United States' tortious conduct amounts to intentional infliction of emotional distress under Connecticut and Texas law, negligent infliction of emotional distress under Connecticut law, negligence under Connecticut and Texas law, and abuse of process under Connecticut and Texas law.

**B. Defenses and Claims of Defendant**

On or around May 12, 2018, Plaintiff Flores Benitez (then age 14) and her mother, Plaintiff Benitez Alvarado, unlawfully entered the United States. Shortly thereafter, they were detained by Border Patrol. Plaintiff Benitez Alvarado was referred for prosecution for unlawfully entering the United States and was moved to a secure DHS adult immigration detention facility. Plaintiff Flores Benitez was designated an unaccompanied minor, was transferred to the custody of ORR, and was moved to the Noank Community Support Services facility in Noank, Connecticut.

On or around June 11, 2018, Plaintiff J.S.R. (then age 9) and his father, Plaintiff Santos Galvez, unlawfully entered the United States. Shortly thereafter, they were detained by Border Patrol. Plaintiff Santos Galvez was referred for prosecution for unlawfully entering the United States and was moved to a secure DHS adult immigration detention facility. Plaintiff J.S.R. was

designated an unaccompanied minor, was transferred to the custody of ORR, and was moved to the Noank Community Support Services facility in Noank, Connecticut.

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). When a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Individuals arriving in or present in the United States who are deemed inadmissible are subject to removal from the United States and, as appropriate, detention pending such removal. 18 U.S.C. §§ 1182(a)(6)(A); 1225(b); 1226; 1357. The federal government possesses statutory authority to "arrange for appropriate places of detention for noncitizens detained pending removal or a decision on removal." 18 U.S.C. § 1231(g)(1).

Federal immigration law authorizes the United States to provide for the custody and care of unaccompanied minors who are present in the United States without lawful immigration status. In fact, under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). Once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. See 8 U.S.C. § 1232(c)(3).

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. These policies directed DHS to

detain and prosecute those violating Federal or State law, including Federal immigration law. In addition, on May 4, 2018, the Secretary of Homeland Security directed officers and agents to ensure that all adults deemed prosecutable for improper entry in violation of 8 U.S.C. § 1325(a) are referred to DOJ for criminal prosecution. This initiative applied to all amenable adults, including parents or legal guardians traveling with their minor children. Consistent with Executive Order 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults—including those traveling with their children—who unlawfully entered the United States along the Southwest border in violation of 8 U.S.C. § 1325. *See generally* EO 13767. Minor children of those adults were transferred to ORR custody pursuant to the TVPRA.

Federal law required that children be placed into ORR custody once the children were designated as unaccompanied minors.

The United States maintains that it is immune from suit under the FTCA on several grounds, including that the separations of Plaintiffs from their children were pursuant to the execution of federal criminal and immigration laws, and their claims are based upon discretionary, policy-based conduct. The United States further maintains that Plaintiffs have not pleaded actionable claims under applicable state law. The Defendant denies that the Zero-Tolerance policy was a pretext to justify separation of a child from the child's parent.

## IV. STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. Stephen Miller was the Senior Advisor to the President in 2017-18.

2. Jefferson B. Sessions III was the Attorney General of the United States in 2017-18.

3. Kirstjen Nielsen was the Secretary of Homeland Security in 2017-19.

4. Kevin McAleenan was the Commissioner of Customs and Border Protection (CBP) in 2017-18.

## V. CASE MANAGEMENT PLAN

### A. Initial Disclosures

The parties exchanged initial disclosures on March 31, 2023.

### B. Scheduling Conference

A scheduling conference was held on November 29, 2022. Another scheduling conference is set for tomorrow, September 6, 2023, at 9:15 AM via Zoom.

### C. Early Settlement Conference

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2. The parties do not request an early settlement conference at this time.

3. If a settlement conference is ordered, the parties prefer a settlement conference with a United States Magistrate Judge.

4. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

### D. Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings

Pursuant to the Court's August 17, 2023 Ruling, Plaintiffs intend to file an amended complaint within 21 days of the Ruling, September 7, 2023. Pursuant to Fed. R. Civ. P. 15(a)(3),

the Defendant's response is due 14 days after service of the amended complaint. The original Complaint in this action is 239 paragraphs, and Defendant expects the amended complaint to be lengthy, even after the recent dismissal of some claims. Due to undersigned counsel's travel plans out of state and the need to circulate responses among multiple entities and co-counsel, Defendant respectfully requests an additional 14 days to respond to the amended complaint, to and including October 5, 2023. Plaintiffs do not object to this request.

**E. Discovery**

a. Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

**Plaintiff's Position:** The issues at stake in the action are of great public importance as they involve a policy enacted at the highest level of the federal government that received broad public attention. Plaintiffs, two of whom were minors at the time in question, have alleged that they suffered gross mistreatment, severe emotional trauma, and other harms, some of which may be permanent. As such, the potential damages are substantial. Information relevant to Plaintiffs' claims is in the possession of government officials. Given the non-public nature of the policymaking process, Plaintiffs have minimal access to that information without the use of discovery as permitted under the Federal Rules of Civil Procedure. Given these factors, the burden and expense of the proposed discovery below does not outweigh its likely benefit in permitting the parties to efficiently resolve the case through settlement discussions or trial.

**Defendant's Position:**

"Common Discovery." The Defendant has already produced records relating to the national policy issues which are at the heart of this litigation in January of this year. These documents, referenced in all family-separation litigation across the country as "common discovery," were compiled by the United States in response to the first family separation case filed in the District of Arizona – *C.M. v. United States*, 19-cv-5217. The common discovery production covers most of the topic areas identified below by Plaintiffs as requiring discovery and spans over 60,000 documents.

National policy deposition transcripts. *See* below.

Plaintiff-specific discovery. The parties agree that both need to conduct Plaintiff-specific discovery, including record discovery and depositions, although they are not in agreement as to its breadth. *See* below.

"Regional policy discovery." Defendant has alerted Plaintiffs to the absence of records in the Common Discovery that pertain uniquely to the Rio Grande Valley ("RGV") Sector of the U.S. Border Patrol. This is because the plaintiffs in *C.M.* (D. Ariz.) and *A.P.F.* (D. Ariz.) were encountered by immigration officials in Yuma (Arizona) Sector. The Plaintiffs in this action were encountered in RGV (Texas) Sector. The effort to retrieve, identify, and redact these documents is a massive one on the same scale as the one that resulted in the Common Discovery. And in some ways, "Regional policy discovery" is more difficult and involved. The United States further notes that these records may be subject to attorney-client privilege, work product protection, governmental privileges, including but not limited to the deliberative process privilege, law enforcement privilege, executive privilege, and other applicable privileges. This effort began as soon as the Defendant recognized the need for it, and is expected to continue for months. It is not

possible for discovery to conclude on the timeline proposed by Plaintiffs unless they waive Regional policy discovery.

b. Plaintiffs anticipate that discovery will be needed on, but not limited to, the following:

- The creation, development, and implementation of the federal government's family separation policy/decision to separate large numbers of families at the Southern border, including any pilot programs involving family separation;
- The reasons and motivation underlying the government officials' decisions to implement the family separation policy/decision to separate large numbers of families at the Southern border;
- Government officials' knowledge that separating children from parents would cause the parents and children emotional and mental harm and trauma;
- The connection, if any, between the family separation policy/decision to separate large numbers of families at the Southern border and the "Zero Tolerance" policy;
- Government officials' consideration of the impact of the family separation policy/decision to separate large numbers of families at the Southern border on future immigration flows into the United States;
- Government policies and practices concerning the care of persons in immigration detention;
- Government policies and practices concerning the care of children in the custody of the U.S. Office of Refugee Resettlement (ORR), including the policies and

practices of the facilities that contracted with ORR and provided care for Viky and J.S.R.;

- Government officials' knowledge about government policies and practices concerning the care of children in the custody of ORR, including the policies and practices of the facilities that contracted with ORR and provided care for Viky and J.S.R.;
- Government policies and practices, if any, regarding the tracking of children separated under the family separation policy/decision to separate large numbers of families at the Southern border;
- Government policies and practices, if any, regarding communication between parents and children separated under the family separation policy/decision to separate large numbers of families at the Southern border;
- Government policies and practices, if any, regarding the reunification of parents and children separated under the family separation policy/decision to separate large numbers of families at the Southern border;
- Government officials' decisions to separate Ms. Benitez Alvarado from Viky, and Mr. Santos Galvez from J.S.R.;
- Government officials' decisions whether to prosecute Ms. Benitez Alvarado and Mr. Santos Galvez under 8 U.S.C. § 1325 or any other statute;
- The manner in which government officials carried out the separation of Ms. Benitez Alvarado from Viky, and Mr. Santos Galvez from J.S.R.;
- Government officials' decisions regarding where to place Viky and J.S.R., including the decision to place them in shelters far from their parents;

- Government officials' actions, if any, to track Viky and J.S.R. after they were separated from Ms. Benitez Alvarado and Mr. Santos Galvez;
- Government officials' actions, if any, to ensure that Ms. Benitez Alvarado and Mr. Santos Galvez were or were not deported without their children;
- Government officials' actions, if any, to provide means of communication between Ms. Benitez Alvarado with Viky, and Mr. Santos Galvez with J.S.R., after the separation;
- Government officials' actions, if any, regarding the reunification of Ms. Benitez Alvarado with Viky, and Mr. Santos Galvez with J.S.R.;
- The conditions of the government or government-contracted facilities in which the government detained Ms. Benitez Alvarado, Viky, Mr. Santos Galvez, and J.S.R;
- Government officials' treatment of Ms. Benitez Alvarado, Viky, Mr. Santos Galvez, and J.S.R., during the course of their respective detentions; and
- Information in the government's possession concerning physical, medical, and psychological harms suffered by each of the Plaintiffs as result of their separation.

c. Defendant Intends to Seek Discovery on:

- Information regarding the Plaintiffs' living conditions and economic circumstances prior to unlawfully entering the United States;
- Information regarding Plaintiffs' entries into the United States and their apprehensions(s);
- Information regarding Plaintiffs' pre-existing medical conditions and history;

- Information regarding communications and other contacts between Plaintiffs during their separations;
- Information regarding communications and other contacts Plaintiffs had with anyone during their separations;
- Information regarding the facts surrounding the claims made in the complaint;
- Information regarding the alleged physical, medical, mental, emotional and/or psychological harms allegedly sustained by Plaintiffs as a result of their separations;
- Information regarding Plaintiff's employment history in connection with any claim for loss of income;
- Information regarding Plaintiffs' experts; and
- The Defendant also anticipates moving for independent psychological examinations of all Plaintiffs.

c. Pursuant to the Court's Scheduling Order Regarding Case Management Plan, *see* ECF No. 44, the Defendant produced some Common Discovery on January 6, 2023 and supplemented with an additional production on April 7, 2023. Plaintiffs propounded an initial set of plaintiff-specific Requests for Production of Documents and Interrogatories on the Defendant on February 10, 2023. *See* ECF No. 43. 71. Defendant provided responses on April 18, 2023. Plaintiffs contend that the Defendant's responses to these Requests are incomplete, and will be following up with the Defendant regarding the same. Defendant proposes a meet and confer regarding the adequacy of both parties' initial disclosures and discovery responses for September 19, 2023.

Plaintiffs propose that all discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be completed (not propounded) by April 15, 2024. Discovery has been underway since January 6, 2023, the date on which the Government produced Common Discovery. Plaintiffs do not anticipate that additional discovery will require more than eight months.

Defendants Position: Defendants object to Plaintiffs' proposed discovery deadline as unrealistic. As Plaintiffs readily admit, this is a substantial and complicated matter of public importance. This case involves potentially hundreds of thousands of documents from many different components of the government, and Plaintiffs already seek 18 unique fact witness depositions, many of which presumably will take place after document production is completed. Furthermore, this case is likely to involve numerous experts disclosed by each side, each of whom will need to be deposed. Defendants propose that all discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be completed (not propounded) by August 15, 2024.

d. Pursuant to the Court's orders in this case, Defendant initially produced only Common Discovery and its responses to Plaintiffs' plaintiff-specific discovery requests limited to one set, pending disposition of the motion to dismiss. That motion has now been adjudicated. Henceforth, discovery will not be conducted in phases.

f. Plaintiffs anticipate the need to take a total of 18 depositions of fact witnesses, a number consistent with that in other family separation cases being litigated in other courts. Plaintiffs are amenable to limiting the scope of policy-level depositions if transcripts from other family separation cases are produced and sufficiently address the matters at issue in this case. Plaintiffs do not agree to conditioning the disclosure of national-level policy witness deposition

transcripts on any agreement to forego or limit depositions of the subject officials before review of the transcripts. To date, the Defendant has refused to produce such transcripts. A motion regarding this issue is pending before the Court. *See* ECF Nos. 71, 77.

Now that the motion to dismiss has been ruled on, Defendant is amenable to producing the subject transcripts in lieu of those national-level policy witnesses being re-deposed in this action, unless Plaintiffs show a specific need for subject matters not addressed in those depositions that can only be directed to that specific witness, and so long as supplementary testimony is via deposition upon written questions. Judge Bolton, who presides over *C.M.* and *A.P.F.*, encouraged the policy-related discovery in those cases be used in actions such as this one. The policy-related depositions in *C.M.* and *A.P.F.* include, among others, two former heads of agencies (specifically, the former Director of ICE and the former Commissioner of CBP), the former Deputy Commissioner of CBP, a former U.S. Attorney, a 30(b)(6) deposition of DHS, and several other senior officials, advisors, and counselors from DHS, ICE, CBP, DOJ, and HHS. Certainly, the very same incentives for the plaintiffs to gather policy-related information in this action were present in *C.M.* and *A.P.F*. and in this case. Accordingly, the Defendant's proposed conditions for revisiting those witnesses are reasonable and well-founded.

Plaintiffs and Defendant agree not to object to the use of these deposition transcripts in this action on the ground that the deposition was taken in an earlier action. *See* Fed. R. Civ. P. 32(a)(8). Plaintiffs and Defendant reserve all other objections to the use of the deposition transcripts from *C.M.* and *A.P.F.* under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

Defendant does not agree to Plaintiffs taking more than 10 depositions of fact witnesses. Defendant also disagrees with Plaintiffs' representation that it would be "consistent" with other family separation cases to allow Plaintiffs to take 25 fact witness depositions. The first child

separation cases to engage in discovery were filed in the District of Arizona. The Court in *C.M. v. United States*, 19-cv-05217 (brought by 5 minor plaintiffs and 5 adult plaintiffs) allowed for 15 fact witness depositions and *A.P.F. v. United States,* 20-cv-00065 (brought by 6 minor plaintiffs and 6 minor children) allowed for 18 fact witness depositions. However, the *C.M.* and *A.P.F.* Court only allowed for a combined total of 12 policy-related depositions. Since that time, many of the other family separation cases pending across the country have not reached the stage of engaging in terms and limits of discovery. However, several cases have, and in those cases, the parties agreed not to take policy-related depositions overlapping with previously-conducted discovery (instead relying on the transcripts from the *C.M.* and *A.P.F.* cases) and have agreed to limit fact discovery depositions to 10 for each side. As there are only 4 plaintiffs in this case, 2 of whom were minors at the times alleged in the complaint, fact discovery witnesses should be limited to 10 for both sides.

Defendant will require a total of 10 depositions of fact witnesses.

The parties agree that each deposition shall be subject to the presumptive limit of one day of seven hours as provided in Fed. R. Civ. P. 30(d)(1). To the extent that Defendant seeks to depose Plaintiff J.S.R., a minor, the parties will confer regarding appropriate limitations for this deposition.

g. The parties will not request permission to serve more than 25 interrogatories.

h. Both parties intend to call expert witnesses at trial.

i. Plaintiffs propose that the parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by January 15, 2024. Depositions of any such experts will be completed by February 15, 2024.

Defendant proposes that that the parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by April 15, 2024. Depositions of any such experts will be completed by June 15, 2024.

j. Plaintiffs propose that the parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by March 15, 2024. Depositions of any such experts will be completed by April 15, 2024.

Defendant proposes that that the parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by June 15, 2024. Depositions of any such experts will be completed by August 15, 2024.

k. On March 31, 2023, Plaintiffs provided a damages analysis as part of Plaintiffs' initial disclosures.

l. Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing

such information. The parties agree that the terms of ECF No. 31-2, ESI Protocol, should govern electronically stored information.

Disclosure of documents is dependent on the execution of privacy waivers by each Plaintiff and the entry of the protective order proposed by the parties. The parties also agree to effectuate service of disclosures electronically between counsel of record for the parties, with any documents exchanged bearing unique bates-stamping numbering on each page. Documents produced from the *CM* and *APF* litigation will bear the original bates-stamping from productions in those cases.

The parties acknowledge their duty to preserve relevant materials in accordance with applicable rules and case law.

m. Undersigned counsel (after consultation with their clients) have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. To the extent non-electronic records exist, the parties agree that production shall proceed as under Rule 34 in the typical course in electronic (Adobe pdf format), subject to any necessary meet-and-confer to resolve unanticipated issues of expense or duplication.

n. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures outlined in Federal Rules of Evidence 502 for asserting claims of privilege after production and have proposed an agreed upon 502(d) Order for the Court's consideration and entry.

**G. Summary Judgment Motions**

Summary judgment motions will be filed 90 days after the close of discovery.

**H. JOINT TRIAL MEMORANDUM**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within 60 days after the entry on the ruling of the last dispositive motion. If dispositive motions are not filed, the joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 90 days after the completion of all discovery.

**VI. TRIAL READINESS**

The case will be ready for trial 60 days from the filing of the Joint Trial Memorandum. Pursuant to the FTCA, this will be a bench trial.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Date: Sept. 5, 2023

*/s/ Michael J. Wishnie*
Michael J. Wishnie (ct27221)
Muneer I. Ahmad (ct28109)
Kirby Tyrrell (phv206703)
Natasha Reifenberg, Law Student Intern
Tanveer Singh, Law Student Intern
Gabriela Torres-Lorenzotti, Law Student Intern
Solveig Olson-Strom, Law Student Intern
Theodore Watler, Law Student Intern
Audrey Huynh, Law Student Intern*
Worker and Immigrant Rights Advocacy Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 902020
New Haven, Connecticut 06520-9090
Email: michael.wishnie@ylsclinics.org
Email: kirby.tyrrell@ylsclinics.org
Phone: (203) 432-4800

*Counsel for Plaintiffs*

Date: Sept. 5, 2023

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

Michelle L. McConaghy, Chief, Civil Division

John W. Larson, Chief, Civil Defensive Unit\
Nathaniel M. Putnam, AUSA

*/s/ Carolyn A. Ikari*
Carolyn Ikari (ct13437)
Assistant U.S. Attorney
450 Main Street, Room 328
Hartford, Connecticut 06103
Email: carolyn.ikari@usdoj.gov
Phone: (860) 760-7953

*Counsel for Defendant*

*Motion for Student Appearance forthcoming